**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: September 28 2011

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| In Re: | ) | Case No. 11-30382 (Jointly Administered) |
|---|---|---|
| Sparkle Stor-All Eaton Township, LLC, *etc.* | ) | Chapter 11 |
| Debtors and Debtors-in-Possession. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

These four jointly administered cases are before the court after a hearing on motions to dismiss that were filed by Region 9 United States Trustee Daniel M. McDermott ("UST") [Doc. ## 75-78] and Lorain National Bank ("Bank") [Doc. # 86]. Debtors oppose the motions.

The four affiliated Debtors are limited liability companies with common ownership and management that own and operate storage facilities. They voluntarily filed Chapter 11 petitions on January 25, 2011. The Chapter 11 cases were commenced after the Bank obtained a judgment and then filed judgment liens in state court proceedings against Debtors on January 5, 2011. The storage facilities, the rents they generate and certain other real estate secure loans from the Bank with a balance due totaling $4,637,109.50 as of the commencement of the case according to the claims filed by the Bank. Debtors have not objected to the Bank's claims. Debtors have continued operations under a series of cash collateral orders pursuant to which the validity and priority of the Bank's liens have been established and monthly adequate protection

payments of $16, 775.00 have been made to the Bank, which payments were current as of the hearing on the motions to dismiss. The Bank timely elected on May 24, 2011, application of the provisions of § 1111(b)(2) to have its claims treated as fully secured regardless of the value of its collateral. 11 U.S.C. § 1111(b)(2); Fed. R. Bankr. P. 3014. [Doc. # 60].

The claims bar date has passed and no other claims besides the Bank's claims have been filed. The Debtors' schedules show that they each owe real property taxes to the counties in which the facilities are located, ranging from $23,057 for the Eaton facility to $10,148 for the West Salem facility. Unpaid federal payroll taxes of $6,623.08 are listed on Schedule F by the Eaton debtor. One of the Debtors lists no unsecured debt and the other three list minimal unsecured debt besides the payroll taxes, which would appear to be a priority claim. None of the scheduled debts for which creditors have failed to file claims have been listed as disputed, unliquidated or contingent, so the claims are deemed allowed without filing of proof. *See* Fed. R. Bankr. P. 3003(c)(2). This case is thus a two party dispute, as evidenced by the facts that no other claims have been filed, there are no unsecured creditors committees and the Bank is the only creditor party that has appeared at the numerous hearings held in this case.

And although this is a two party dispute, Debtors have filed four proposed disclosure statements and five proposed plans without engaging or even attempting to engage, as shown by the hearing testimony of Richard Johnson, a Bank Vice President, in meaningful post-petition discussions about treatment of the Bank's claims, until overtures were made just prior to the hearing on the motion to dismiss. Debtors are thus all-in in seeking to cram-down the treatment of the Bank's claims over its objection. *See* 11 U.S.C. § 1129(b)(2)(A); *see In re Brice Road Devs., L.L.C.*, 392 B.R. 274, 284, n.6 (6th Cir. B.A.P. 2008).

Debtors filed their original proposed disclosure statement and plan on May 13, 2011. [Doc. # 56]. The Bank objected to the proposed disclosure statement. At the hearing held on June 8, 2011, the court orally sustained the Bank's objections to the proposed disclosure statement and granted Debtors leave to file an amended plan and disclosure statement by June 24, 2011, with a further hearing set for June 29, 2011. [*See* Doc. # 66].

Debtors filed their amended proposed disclosure statement and plan on June 24, 2011, [Doc. # 72], to which the UST filed an objection, which in turn prompted Debtors to file on June 27, 2011, a second amended plan and disclosure statement, [Doc. # 79]. At the hearing on June 29, 2011, the court orally sustained the objections to the disclosure statement and granted Debtors leave to file further amended documents by July 11, 2011, with a further hearing set for July 20, 2011. [Doc. # 93].

Debtors filed their third amended proposed disclosure statement and plan on July 11, 2011. [Doc. # 96]. After the Bank filed another objection on July 18, 2011, to the documents that were filed on July 11, 2011, Debtors filed a fourth amended plan [Doc. #99] on July 19, 2011, the day before the continued hearing [Doc. # 99].

At the continued hearing on July 20, 2011, which was the third on the adequacy of disclosure, the court again orally sustained the objections to the disclosure statement. But this time the court did not grant leave for further amendments and instead indicated that proceedings on the then-pending motions to dismiss should go forward before more resources were invested in trying to come up with a plan and disclosure statement that would meet applicable statutory standards.

The motions to dismiss are governed by § 1112 of the Bankruptcy Code. 11 U.S.C. § 1112. The standard for relief under § 1112 is "cause." A movant bears the initial burden to establish cause for dismissal or conversion, *In re Park*, 436 B.R. 811, 815 (Bankr. W.D. Va. 2010), and that burden must be met by a preponderance of the evidence, *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994). If cause is established, the court must dismiss the case or convert the case to a Chapter 7, whichever is in the best interests of the estate and creditors, or appoint a Chapter 11 trustee if the court instead finds that such appointment is the best interests of creditors and the estate.

Cause is not specifically defined in the statute, but § 1112(b)(4) contains a list of examples of circumstances that would constitute cause.[1] The list of examples in the statute is viewed as illustrative and non-exhaustive, *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008), and the court should "consider other factors as they arise...and use its equitable powers to reach an appropriate result in individual cases," *In re Ameribuild Constr. Mgmt, Inc.*, 399 B.R. 129, 132 n.3 (Bankr. S.D.N.Y. 2009)(quoting H. Rep. No. 95-595, 95th Cong., 1st Sess. At 405-6 (1977)).

Section 1112 was amended in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 11 Stat. 23, effective October 17, 2005 ("BAPCPA"). Under § 1112 as it existed immediately after the enactment of BAPCPA, once a movant established a prima facie showing of cause, § 1112(b)(1) specified that the court should not grant relief in the form of dismissal or conversion if the court made a finding that dismissal or conversion would not be in the best interest of creditors and the

---

[1] Although § 1112(b)(4) contains the word "and" between subsections (O) and (P), courts have generally held that such use was a scrivener's error and the list should instead read in the disjunctive, utilizing the term "or" rather than "and."

estate based on specific unusual circumstances. The burden was upon the respondent to prove such unusual circumstances. Such unusual circumstances cannot solely be facts that are common to Chapter 11 cases generally. *See In re Sydnor,* 431 B.R. 584, 591 (Bankr. D. Md. 2010).

Section 1112(b) was recently amended again by "technical amendments" effective on December 22, 2010. Bankruptcy Technical Corrections Act of 2010, Pub. L. 111-327, 124 Stat. 3557 (Dec. 22, 2010).
[2] Subpart (b)(1) now reads:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). As now stated, upon establishment of cause, the court shall dismiss or convert the case, or appoint a Chapter 11 trustee or exmainer, unless the specific circumstance set forth in Subsections (b)(2) or (c) applies. In turn, § 1112(b)(2) now reads:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that–and
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> (i) for which there exists a reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed by the court.
> 11 U.S.C. 1112(b)(2).

The most recent change in the statute eliminated the words in § 1112(b)(1), as enacted in BAPCPA, "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate. . ." This change seems to make that defense no longer separately expressed as being available to any action to dismiss or convert. Rather

---

[2] This case was filed after the effective date of the technical amendments. As a self-described technical amendment, the changes apply to both cases pending and thereafter filed. *See Landgraf v. USI Film Products*, 511 U.S. 244, 277 (1994) (finding that application of amended statute to pending cases is presumed unless such application would have "retroactive effect").

4

the defense now resides only in § 1112(b)(2) and appears more limited in application. The defense of unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate can only be invoked where the debtor or other party opposing the motion establishes that (a) there is a reasonable likelihood that a plan will be confirmed within the timeframes expressed in § 1112(b)(2)(A); (b) the grounds for conversion or dismissal include an act or omission other than the cause set forth in § 1112(b)(4)(A); and (c) there is a reasonable justification for the act or omission, which act or omission will be cured within a reasonable period of time fixed by the court.

The Bank asserts as cause the following: Debtors' series of proposed disclosure statements has still not produced one that affords it "adequate information" that complies with § 1122; Debtors' series of proposed plans has still not produced an even arguably confirmable plan proposal; unreasonable delay and lack of good faith by Debtors as the burden has repeatedly been placed on the court and the Bank to tease out how Debtors propose to treat the Bank's claims and the factual basis for doing so. The Bank posits that Debtors have now had a fair opportunity to move ahead toward plan confirmation and have been unable or unwilling to do so effectively. In short, enough is enough from the Bank's perspective.

The UST similarly asserts as cause that Debtors have not effectively moved forward with the plan and disclosure process after a reasonable opportunity to do so, resulting in unfair delay. The UST also observes that this is clearly a two party dispute that no longer justifies invocation of the resources of the Bankruptcy Code and court.

Of the illustrative circumstances listed in the statute constituting "cause" for dismissal, movants' arguments most directly implicate § 1112(b)(4)(J)("failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court") and (b)(4)(E)("failure to comply with an order of the court"). Both subparts (b)(4)(J) and (b)(4)(E) in turn seem reasonably construed to include not only the requirement that filing deadlines and court orders be met, but that they be met with documents and actions that substantially comply with the statute and the directives of the court, thus placing the case in a reasonable posture to move forward toward reorganization. Debtors' most recent proposed form of plan and disclosure statement do not place the case in that posture, as they remain fundamentally flawed and lacking substantial compliance with §§ 1122 and 1129.

Debtors intend to retain all of the storage facilities and continue in business essentially as they have,

5

paying creditors, including the Bank, out of cash flow.[3] But Debtors' proposed written plans, including the version filed on July 19, 2011, after the July 11, 2011, deadline, all ignore on their face that the Bank has made the election under § 1111(b)(2) to have its claim treated as fully secured. For cramdown purposes under § 1129(b)(2)(A)(i), Debtors must pay the Bank's secured claims as of the effective date of the plan based on the present value of the collateral. The statutory standard necessarily requires an interest component where, as here, the collateral value will be paid over time and not in a lump sum at confirmation. *Brice Road*, 392 B.R. at 279-80; *In re Aradigm Commc'ns*, 547 F.3d 763, 768-89 (7th Cir. 2008); *see Rake v. Wade*, 508 U.S. 464, 472 n.8 (1993). The Bank having made the § 1111(b)(2) election, however, the value of the deferred cash payments Debtors propose to make to the Bank must also total at least the $4,637,109.50 amount of its claims as fully secured, with the present value of the payments equal to the value of the collateral. *Id.* at 284-88.

The last written version of the plan presented on July 19, 2011, [Doc. # 99, pp 5-6/14], states only that the Bank will be paid $10,135.61 per month, arrived at using a liquidation value for the real property of $1,465,000, and a 25 year amortization rate at the original contract rate of interest of 6.84% "until the balance is paid in full." Which balance? How long do the Debtors think that repayment period is? What does that unspecified duration mean with respect to the useful life of the improvements? What rental and occupancy rates do those payments assume over time and how does that compare to historical rates? Even setting aside what would be material and expensive confirmation disputes over the value of the collateral and the appropriate interest rate for cramdown purposes,[4] neither the latest plan nor the latest disclosure

---

[3]No pre-petition historical cash flow information or post-confirmation projections or explanation for how the facilities can reasonably be expected to cash flow over the plan period when they could not make it before is provided. The Bank has asked for rent roll and other information to understand facility occupancies and rentals and said information has not been timely provided.

[4]The hearing on the motion to dismiss is not a confirmation hearing per se. *But cf.* 11 U.S.C. § 1112(b)(2)(A). The Bank raises other arguments in support of its facial non-confirmability objections as grounds for dismissal that are either premature or simply not well taken. For example, the Bank asserts absolute priority rule violation arguments, which this court generally finds to be the province of unsecured creditors, not secured creditors, to assert on cramdown. *See, e.g., In re TCI 2 Holdings, LLC*, 428 B.R. 117, 169 (Bankr. D.N.J. 2010). The Bank has elected to forego an unsecured deficiency claim and to be treated as fully secured. And while an unsecured creditor may choose to so object should confirmation proceedings go forward, that is not a basis for dismissal of this case in its present posture. Relying on the Sixth Circuit Bankruptcy Appellate Panel decision in *In re Buttermilk Towne Centre*, 442 B.R. 558 (6th Cir. B.A.P. 2010), the Bank also asserts that Debtors cannot use its cash collateral under the circumstances of this case as essentially an undersecured single asset real estate creditor without an equity cushion. While that may have been a valid objection, which was not made, to the use of cash collateral in this case, it is not a confirmation objection as long as the creditor's claims are treated in accordance with § 1129, regardless whether the collateral includes an assignment of rents.

statement explain the critical implications of the statutory standards for cramdown and § 1111(b)(2) for treatment of the Bank's claims in this case or touch even summarily on how they will be met. Indeed the only financial information proffered by Debtors in the context of disclosure in any of the several plan and disclosure statement documents advanced to date is copies of filed post-petition DIP operating reports and a simple schedule of plan payments due for 60 months, with the total amount to be paid to the Bank over that time adding up to only $608,136.60. [*See* Doc. #79-2]. For this reason alone, even if the disclosure statement provided "adequate information" about the proposed plan, 11 U.S.C. § 1125(a), which it does not, the proposed plan is still not confirmable on its face and the disclosure statement filed on July 11, 2011 (the third amended and fourth overall), thus cannot be approved as a basis for plan vote solicitation. *See, e.g., In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996)("[A] disclosure statement should be disapproved where the plan it describes is patently unconfirmable."); *In re El Comandate Mgmt., Co.*, 359 B.R. 410, 415 (Bankr. D.P.R. 2006).

The court understands that the issues raised by the motions are not precisely confirmation or even disclosure, but cause for dismissal or conversion. However, these substantial disclosure and plan shortcomings are part and parcel of cause for dismissal in this case. The court ordered two deadlines (June 24, 2011, [Doc. # 66] and July 11, 2011 [Doc. #93]) for amending the plan and disclosure statements to address these material and critical shortcomings. Documents were filed by the deadlines, although the latest version of the plan was not filed until July 19, 2011, on the eve of the July 20, 2011, hearing and after a further written objection was filed by the Bank. But as explained above the documents that were filed remain materially and substantially deficient from the standpoint of proceeding reasonably and effectively toward a non-consensual cramdown plan in a two party case.

In the meantime, Bank Vice President Johnson also testified to little meaningful post-petition effort by Debtors to discuss the treatment of the Bank's claims toward alternative achievement of a consensual plan. And the Bank has unaccountably struggled to obtain basic information about facility rents and rent rolls from Debtors in a business that is wholly based on them.

The court finds that where a debtor has been afforded multiple opportunities to file confirmation process documents that at a minimum at least facially promote case progress toward confirmation and has failed, both from a substantive content standpoint and a deadline standpoint, "cause" for dismissal exists due to "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" and "failure to comply with an order of the court." Altogether, cause for dismissal

has been shown pursuant to § 1112 (b)(1) under the circumstances of the jointly administered cases. As Bank counsel summed up the situation, enough is enough relative to the delay and expense of repeated unsuccessful efforts to move these cases forward to confirmation.

Movants having demonstrated cause, the case must be dismissed or converted unless Debtors can meet the burden that has shifted to them to show that there is nevertheless "a reasonable likelihood that a plan will be confirmed...within a reasonable period of time"and there exists a reasonable justification for the any omission to act and that such admission can be cured within a period of time fixed by the court. 11 U.S.C. § 1112(b)(2).

Debtors did not submit any evidence at the hearing on the motions to dismiss and did not identify any unusual circumstances related to this particular case establishing that conversion or dismissal is not in the best interest of creditors and the estates. In advance of the hearing on dismissal, Debtors had filed on August 25, 2011, an unauthenticated "Profit & Loss" Statement for all four locations relating to the time period from June 24, 2011, through July 24, 2011. No evidence was elicited regarding this document or what it portends for the reorganization effort.

Counsel said that Debtors intended through their plan to pay off in a balloon payment both the present value of the Bank's collateral and the Bank's total secured claims after five years and that the means for making the balloon payment would be either through refinancing the Bank's debt or sale of the facilities. Even apart from the fact that the latest versions of the plan and disclosure statement state nothing of the kind, a glaring omission characterized as a typo by Counsel, no evidence was presented by Debtors at the hearing to support even arguably the feasibility of this proposal. Such balloon payment proposals generally raise court scrutiny and skepticism that such a plan merely allows debtors to postpone the inevitable and gamble creditors' collateral on a long-shot improvement in, in this instance, the value of the storage facilities. *See, e.g., In re M & S Assocs., Ltd.*, 138 B.R. 845, 851-52 (Bankr. W.D. Tex. 1992)(debtor's proposed balloon payment in four years of remaining debt secured by apartment complexes was characterized as an unfeasible gamble "on the long shot possibility of a drastic improvement in the real estate market."); *In re Griswold Bldg, L.L.C.*, 420 B.R. 666, 703-705 (Bankr. E.D. Mich. 2009).

And while Debtors presented no evidence supporting the feasibility of any balloon payment proposal, Johnson's undisputed and credible testimony highlighted just what a long shot it would be. Based on the 60 monthly payments proposed by Debtors, in excess of $3 million would still be owed to the Bank when the balloon payment came due. The value of the properties based on Debtors' proposed plan valuation

8

would have to more than double in that time period to generate enough funds to payoff the Bank through sale of the facilities. Another lender would likely only advance on a 75% loan to value ratio, meaning that the value of the collateral would have to exceed by 25% the balloon payment amount required to payoff the Bank, an appreciation of some 20% per year from current values. Given the ongoing difficult economic conditions in northern Ohio that Debtors acknowledge brought them to Chapter 11 in the first place and the cash flow shown to date, Johnson opined that such a dramatic appreciation in value was unlikely.

Feasibility is a requirement for confirmation of a Chapter 11 plan. 11U.S.C. § 1129(a)(11); *In re Made in Detroit, Inc.*, 299 B.R. 170, 175 (Bankr. E.D. Mich. 2003). Even if the court allowed Debtors to file a sixth proposed plan and a fifth proposed disclosure statement that do actually provide for a balloon payment of the Bank's claims, no showing has been made that the mandatory feasibility standard of § 1129(a)(11) can be met. Not only are there no unusual circumstances against dismissal or conversion that have been advanced under § 1112(b)(2) in the face of movants' showing of cause under § 1112(b)(1), the court concludes that Debtors have not shown a reasonable likelihood that a plan will be confirmed within a reasonable period of time. Eight months have elapsed and the prospects for a confirmable plan are still speculative at best. Debtors not having met their shifted burden under § 1112(b)(2)(A), the court need not address the additional conjunctive elements set forth in § 1112(b)(2)(B).

Movants having proven cause under § 1112(b)(1) and Debtors having failed to meet their shifted burden under § 1112(b)(2), the only remaining issue is whether appropriate relief is dismissal, conversion to Chapter 7 or appointment of a Chapter 11 trustee or examiner. Movants seek dismissal. As two party cases involving an undersecured creditor that can effectively address its own interests and protect its collateral in state court, as can the county real property taxing authority creditors, and with few unsecured creditors and minimal unsecured debt, there would be no benefit to creditors and the estate through conversion to Chapter 7 and appointment of a Chapter 7 trustee to administer the storage facilities. Conversion would be met with an immediate motion for relief from stay and for abandonment of the storage facilities from the estate, with a strong likelihood of leading in short order to no assets for a Chapter 7 trustee to administer. Nor have any facts been revealed that suggest that the future and prospects of these Debtors and their creditors in Chapter 11 could or would be enhanced by appointing an examiner or ousting current management in favor of a Chapter 11 trustee . The court agrees with movants that dismissal is the only relief that makes sense on the record before the court. The jointly administered cases will therefore be dismissed.

9

The court will enter a separate order in accordance with this memorandum of decision.